*PHILIP URBIN DUGUET, *Plaintiff in Error*,    [*476]
*against* FREDERICK RHINELANDER, AND OTH-
ERS *Defendants in Error.*(a)

Where a subject of a belligerent state emigrates to this country, *flagrante
bello*, and becomes naturalized, such naturalization will support a warranty
of neutral property, in a policy of insurance ; and the assured need not dis-
close to the insurer, the time of his emigration.

THIS cause was brought before the court, by writ of error
from the supreme court.   For the facts in the cause, and the
opinion of the court below, see 1 Johns. Cas. 360.

VAN VECHTEN, Senator.   The questions for our conside-
ration are :

1. Whether the plaintiff's emigration and naturalization
here, *flagrante bello*, entitled him to the national character,
and protection of an American citizen, in relation to an ene-
my of France ? and

2. Whether the circumstances of his emigration and na-
turalization did not materially increase the risk of the insur-
ers, and therefore, ought to have been disclosed to them ?

With respect to the first question, it appears to me to be
the settled doctrine of the most approved writers on the law
of nations, that emigration in time of war does not change
the character of the emigrant, in relation to the parties at
war.   (Vattel, b. 1, c. 19, sect. 220 to 223 ; book 2, c. 27.)
By the declaration of war he becomes a party to the contest
between his government and the enemy.   This situation at-
taches to it certain duties and responsibilities, from which he
cannot by his own mere act absolve himself.

A contrary doctrine would be inconsistent with the sound-
est maxims of national policy, because it would encourage
mercantile men, at the commencement of every war, to

Rep. 138.   *Calhoun* v. *Ins. Co. of Pennsylvania*, 1 Binn. Rep. 293, 305.
*Fitzsimmons* v. *Newport Ins. Co.* 4 Cranch, 185.

(a) S. C. 1 Caines' Cases in Error, xxv.

change their residence and character, in order to exempt themselves from the burdens and losses which are incident to a state of war.

[*477]     *I therefore concur in the opinion of the supreme court, that the plaintiff's emigration and naturalization, *flagrante bello*, cannot, with respect to Great Britain entitle him to the rights of an American citizen.

But, independent of this question, I take it, that this court has settled a principle in the case of *Arnold and Ramsay* v. *The United Insurance Company*, (1 Johns. Cas. 363,) which is equally decisive against the plaintiff upon the second question.

In that case the property captured was also warranted to be American ; but because Hawley, one of the partners, was resident and engaged in trade within the Spanish dominions, although an American in fact, it was held, that his national character was thereby rendered so far questionable, in relation to the belligerents, as to render the disclosure of those circumstances necessary to render the policy valid.

In the present case, the emigration of the plaintiff, *flagrante bello*, placed his national character, with respect to the enemies of France, in a questionable and suspicious light, and thereby the risk of the capture of his property at sea was materially increased. This circumstance was therefore necessary to be disclosed to the insurers, and the omission to disclose it avoided the policy.

The conclusion upon both questions, in my opinion is, that the judgment of the supreme court ought to be affirmed.

GOLD, Senator. The first question arising for the consideration of the court, in this cause, is, *whether the plaintiff has verified his warranty of American property in the goods insured ?* The determination of this point involves the important question, whether the plaintiff is to be deemed, *for the purposes of commerce*, an *American citizen.* On this question, while the claims of a state upon its citizens, when surrounded and pressed by its enemies,

P. U. Duguet v. P. Rhindlander and others.

are recognized ; while the course to which duty *prompts is plain, and readily perceived; yet so dif- [*478] ferent are the circumstances of different states, so various their policy, that the right of citizens to emigrate, during war, must, so far as respects the parent state, depend on the particular ordinances of each individual community. What might not be inconsistent with good policy, in a state possessed of an overflowing population, and but a scanty subsistence, would be quite different from that of a state with a thin population, requiring all her hands for defence, and with sufficient bread for all her citizens. . Was the condition of all nations alike in this respect, was the same reason and necessity for prohibiting emigration during war common to all, the rule contended for by the defendants, would have been long since settled, as *a fundamental principle of the law of nations*, and expressed in language too unequivocal to admit of a doubt at this period.

If a state is assailed by external enemies, and requires for defence the united efforts of all its citizens, of all those to whom it has given birth, a prohibition against emigration, as we have witnessed in France, by the ordinances of 1704 and 1744, will attain all that is necessary in this respect, to the safety and defence of the state. If such prohibition is not interposed, the door is open to emigration. But is an emigration, which is lawful in relation to the parent state, equally so in reference to the enemy of such state ? As a general rule it is so. At the same time, should the citizens of a belligerent power, in concert with the state, or for the purpose of multiplying the warlike resources, or aiding the enterprises of the state, emigrate to, and take a stand in a neutral country, in order to mask mercantile projects under a neutral flag, there can be no hesitation in pronouncing such emigration *fraudulent*, and that an establishment and residence for such unwarrantable purposes, cannot acquire to the emigrant a neutral domicil ; he still would continue a member of his native family, and as such must participate in and be affected by the fortunes of the parent state.

When such a case is brought *before the court, such · [*479]

a determination will be had, as will preserve to the belligerent the full exercise of its rights over the property of its enemy. But because the right of emigration may be abused in time of war, it by no means follows that such right does not exist; and though it may be difficult to detect and punish such abuses, the argument from thence, against the right, cannot prevail.

As far as appears from the record in this cause, the emigration of the plaintiff proceeded from a common principle of action that prevails more or less in all periods, and all countries; for the subsistence of himself and his family, he removed to and acquired a *domicil* in this state. This *domicil*, upon general principles, confers, for the purposes of commerce, the right of an American citizen. Native Englishmen *domiciled* in America, by a decision of Westminster Hall, participate the rights of American citizens, in relation to trade between America and the East Indies.(*a*) It will be unnecessary to consider whether the situation of the parent state was not such, at the period of the plaintiff's emigration, as to have no claims upon its citizens; as rent with factions and violence, and yielding no protection. Upon the point of *undue concealment*, raised in the cause, after the foregoing opinion, it will be necessary only to add, that if the faith of contracts should be deemed to have required of the plaintiff a disclosure of his condition, *as affording a pretext for condemnation, undue concealment* is a fraud, odious in law, and as such, not being found by the verdict, is not to be presumed. For the foregoing reasons, the judgment of the supreme court ought to be corrected, and the judgment here should be as for a total loss.

The majority of the court being of the same opinion, it was therefore ORDERED and ADJUDGED, that the judgment of the supreme court be reversed, and the record remitted, &c.

Judgment of reversal.(<em>b</em>)

(*a*) [Old note.] See *Wilson* v. *Maryatt*, 8 Term Rep. 31 ; affirmed, in error, see 1 Bos. & Pull. 430.

(*b*) See *supra*, vol. 1, 366, n. (*a*,) and 368, n. (*a*) to *Arnold* v. *United Insurance Co.*