Per Curiam.

Two questions are made in this cause.
1. Was every proper information given to the underwriters?
2. Were the charges proper and sufficiently proved ?
On the first, no doubt was entertained at the trial, nor is any now. It was not necessary to disclose how long the Helen had been at Guadaloupe, nor that she was a prize ship. The first could be material only in case her being there antecedent to the insurance had enhanced the risk, and the latter, in case of a warranty, or representation, which negatived her being a ship of that description. It is of no importance how long she had been at Guadaloupe, unless the policy attached from the moment of her arrival there, although it might have been several years before it was effected. The construction contended for would be *117 unnatural. In a case like this, when a vessel has been long in port, previous to an insurance, the risk does not commence till some act be done towards equipping her for the voyage, or on the day on which she is stated, as here’ to have been in safety in the port from which she was to sail; this was the 28th of July, 1800. If she had been lost or injured before that day, the underwriters would not have been liable. When she is stated to have been at Gruadaloupe(a) on a certain day, it must mean that she was there in safety,(b) and that no preceding accident was to be made good by the assurers; it cannot, therefore, be material * where she was prior to that day, for the par- [*80] ties, by agreement, have ascertained that the risk shall commence on the 28th July, 1800.
The other question relates to the value of the vessel. In forming this valuation, there were added to the first cost sundry charges, on the propriety of which we are now to determine. On the trial one account was rejected, and we still think those charges improper, because they accrued prior to the 6th of February, 1800, five months before the policy attached; but principally because they are, with hardly any exception, of such natures as to have been occasioned solely by her stay at Gruadaloupe, and such as *118 gave no permanent value to the vessel. They consist (except one anchor) of provisions, which must have been con sumed while the vessel was used as a storeship, and of wages and other disbursements, which become necessary by such stay, and ought not to swell the computation when we are ascertaining her worth.
To the other account it is objected that the items are neither proper nor well proved. As to the proof, the witness says, “The bill of disbursements for the ship paid by h'im for repairs and necessaries to get the ship despatched on the voyage from Point Petre to St. Thomas’s, amounted to 4,461 dollars, as per account (A) annexed.” There is nothing of hearsay in this; he paid the money himself, and states on what account. What he heard related only to the purchase money, not to what was paid for repairs; it is true there is no date to this account, but it is a fair deduction, from the deposition of Davis, that all these expenses were incurred after he took possession of her, which was in July, 1800 : for he expressly states, that he cannot say what expenditures took place before the vessel came to his hands. The propriety of many of these charges against an underwriter on the vessel is also denied. ,If these be deducted, there will still remain a sum large enough to entitle the plaintiff to retain his verdict. It is admitted that in estimating the value of a vessel, it is usual to allow a month’s pay advanced to the captain and crew, provisions for the voyage, and all other charges for articles necessary to prepare her for it. The counsel will be furnished with an estimate of the court according to this opinion, in which the deductions must be regarded as liberal as they respect the underwriters.
*Upon the whole, we are satisfied that the first cost of the vessel, and the expenses of such repairs and outfits as are properly chargeable against the underwriters on her, are fully equal to the sums covered by the *119 two policies, and that therefore, a new trial ought not to hr granted.
New trial refused.
|5P“ By a statement which was read, as forming a part of the opinion of the court, the value of the Helen was thus estimated.(a)

Dollars.

The Helen cost . . . 6,450 48
There was received on a prior policy . ■ 4,349 35
This leaves of her first cost for this policy 2,101 13
To this must be added the following Livres. Dollars.
items of the account (A) :
The hire of sundry hands for rigging
and ballasting, &c. . . . 7,020
Old cordage.....360
Do. 630, an anchor, 540, . . . 1,170
fPlank, 81, carpenters, 540, . . • 1,421
Beef and pork, 864, cable, 2,070, . 2,934
Cordage bought at vendue . . . 1,440
Caulking the long boat . . . 180
Bill for plank..... 74
Blacksmith’s bill, 474, caulker’s, 756 . 1,230
Two bills for crockery for cabin, 540, and
198 ...... 738
Paid for a boat . . 576
‡ A topgallant-sail and some others . 2,142
Two spars, 389, cooper, 270 . . 657
Shipchandler.....2,994 *120 Carpenter’s bill, water, &c. 594
Wages to captain, &c., advanced . 3,672
* 27,202
Commissions at 5 per cent. . . 1,361
9 livres = to one dollar .
3,173 00
*Add also premium, of insurance on
second policy for dollars 7,500 1,312 50
Commissions on do. at 5 per cent. 65 62
Expenses of reclaiming her after capture . 200 00
6,852 25
A mistake in adding the items marked ‡ . 44 00
Interest as usual on this sum after deducting 2 per cent. .... 137 93
6,758 32
The two per cent., which, by contract of the parties, are to be deducted in case of loss, we regard as part of the consideration for the insurance, or as so much additional premium in the event of a disaster. To add it, therefore, to the valuation would be a violation of this agreement. The passages referred to in Wesket only show how an insurance ought to be made to be completely covered, not that two per cent, of the value shall not be retained where it is so stipulated. He admits this was formerly the practice in England, but the policies there do not now contain this clause: on the whole, we think two per cent, must be deducted from the preceding valuation and interest calculated on the balance, to wit, on the sum of dollars 6,758 32.
Mistake of dollars 88 88 in the item marked f makes the true sum dollars 6,669 44.

а) The rule in England is, that when the words “at and from” are in a policy effected on a vessel then and before in port, the risk begins from the subscribing; when on a vessel expected to arrive at a certain place, but at which she has not arrived, the risk commences on the first arrival. Neither of these principles, it is evident, would govern here.

 If an insurance be “at and from” a foreign port, where a vessel then is, in the course of her voyage home, the policy attaches if she be in physical safety, though' she may be in political danger. Bell v. Bell, 2 Camp. 415. But if she arrives a wreck, and has never been once in safety, it does not. Parmeter v. Cousins, Ib. 235. But there is a degree of seaworthiness commensurate to the risk, which gives the technical safety required to render the policy effectual; for a vessel maybe seaworthy under the word “at,” while undergoing repairs, and when she would not be seaworthy “from ” her port, on the voyage, (Forbes and another v. Pilson, Park, 6th ed., p. 299, n. a, and the cases there,) though the policy be on her “at and from” her original port of departure. See also Garrigues v. Coxe, 1 Binney, 594.

 The value of a ship is what she may be worth at the time of sailing on the voyage insured, including repairs, value of her furniture, provisions and stores, money advanced to the sailors, and every expense of outfit, adding the premium of insurance. Marsh. 623, last ed. Agreeably to the above rule the estimate in the case was made, which, in order to be as explici on this subject as possible, is inserted at length.