NEW-YORK,
May, 1805.

H. Livingston
v.
J. Delafield.

——————
ing from not paying interest for 25 years.

## Henry Livingston *against* John Delafield.

ON a valued policy upon the body of the ship *Eliza*, *Henry Livingston* master, from *Jamaica* to *New-York*, opened the 16th of *November* 1801, and subscribed by the defendant on the 18th, at a quarter before 12 o'clock, for the ordinary premium of six *per cent*. On the trial, the policy, abandonment, and interest were proved. The latter by a British register, granted at *New-Providence*, in the name of the plaintiff. The other facts, in evidence, so far as they are important to the present decision, were these.

The insurance in question was effected by the order of *Isaac Riley*, who had shipped on board the *Eliza*, for the outward voyage, a number of horses, driven for him from *Connecticut*, by one of the ship's crew, named *Brainard*, who, after sailing in her from *Jamaica* on the 25th of *September*, and seeing the vessel founder at sea, in consequence of starting a butt in a gale of wind, arrived, with another of the seamen belonging to her, at New-York, during the night of the 17th of *November*. It did not, however, appear that they had been on shore, and the vessel in which they came, was, early in the morning, ordered down to the quarantine ground, as she had passed it the evening before. Nor was it clearly in evidence, that at the period when the policy was opened, any communication was made as to the time when the Eliza sailed, though the broker, through whose intervention it was done,

If the information of the loss of a vessel be known in a place early in the morning of the day on which a policy is effected at noon, it is not proof of fraud in the underwriter though it be brought by some of the crew of the ship insured, if it do not appear that they had been on shore. If it be doubtful whether a communication as to the time of a vessel's sailing has been made, a new trial will be ordered to ascertain that fact, especially

NEW-YORK,
May, 1805.

H. Livingston
v.
J. Delafield.

if from the a-
mount of pre-
mium it may
be inferred that
it was not duly
ftated, but
should circum-
stances render
it difficult to
establish on the
second trial,
the facts well
proved on the
first, the order
for the second,
will be, on con-
dition of ad-
mitting those
facts.

testified, that uponhis first instructions on the 16th to procure in-
surance for only 2,000 dollars, he immediately advised covering
the vessel to a larger amount, which *Riley*, declined, saying he
would wait.    That on the 18th, *Riley* called about ten o'clock in
the morning and desired 2,000 dollars more to be effected, and on
hearing the increase of premium a few days might occasion re-
presented, as the vessel was out of time, was induced to give direc-
tions for 3,000 dollars to be procured.    That *Riley* staid three
quarters of an hour in the office, and then went away, upon which
the witness took the policy to the *Coffee-House*, opened it again,
and instantly after the defendant had sub cribed, the news of the
loss of the *Eliza* was brought in.    That he communicated this
about one o'clock to *Riley*, whose countenance did not betray any
conciousness of fraud.    That he advised *Riley* to make the defen-
dant an offer of examining the persons who arrived.    On read-
ing a written memorandum, handed to the witness to refresh his
memory, it turned out to have been made in his office, by *Riley*,
on the 18th, specifiying the sailing of the ship to have been about
the 3d of *October*, according to which the witness swore, he be-
lived his representation on that point, to have been made to the
first underwriter, by a written order for insurance, shewn on the
16th and delivered to the defendant when payment was demanded.
The memorandum read, contained a detail of *Riley's* transactions
on the 18th of *November ;* from which he appeared to have been
occupied till the moment of receiving the account of the loss from
the broker, in quarters of the town, where the news had not arriv-
ed.    But it was in evidence, that *Riley* had been for some time, in
the habit of calling every day, about 10 o'clock A. M. at the office
of one *Lang*, a printer of a daily paper, in great repute, for the
marine information it affords, to inquire for ship news ;  that intel-
ligence of the loss of the *Eliza* had been received there, very early
on the morning of the 18th, that *Riley*, on that day, did not call
till near two o'clock in the afternoon, and then requested *Lang* to
take notice, he had not called that morning.    There were some
slight circumstances tending to shew that *Riley* was the person
actually interested in the vessel.

On this evidence, the judge charged the jury, that payment
was resisted on two grounds, 1st, Because the assured knew of
the loss previous to the insurance.    2d, Because the time of the
vessel's sailing was not disclosed to the defendant, by which she
would have appeared a missing vessel.    As to the first, it was a

principle of law, that fraud should not be presumed, though it might, as other matters, be established by circumstances. It was not proved positively, that *Riley* knew of the loss before the insurance was made. From the arrival, in this port, of the two men belonging to the crew of the *Eliza*, the night before it was effected, it did not necessarily follow, that *Riley* knew of the loss, there being no evidence of their having come on shore. Upon the whole, he was of opinion, that the proof on this point was not satisfactory. As to the second point, he said he had considerable doubts. He rather thought the broker mistaken, as to his having communicated the time of sailing to the first underwriter on the 16th. There was pretty strong proof of this in *Riley's* memorandum, from which it appeared, that he himself did not know when the vessel sailed, until the 18th of *November*. Upon this charge, the jury brought in a verdict for a total loss, to set aside which the defendant now applied on the following grounds. 1st, When the parties live in the same place, if the assured might have known of the loss in the usual course of business, such knowledge must be presumed until the contrary be shewn by evidence on his part. In the present case, it might have been so known, besides, particular facts from which it might be presumed. 2d, The vessel being admitted to be greatly out of time, proof of the time of her sailing, and that other vessels had arrived, and brought the assured intelligence of her having sailed before them, ought to have been communicated to the defendant. 3d, That it was the duty of the broker to have communicated it, (if he knew it) is not sufficient evidence to found a presumption that he did so.

*Pendleton* for the defendant. Facts may afford grounds to presume fraud. The retaining possession of goods by a vendee after an absolute sale is one, out of many other instances. The arrival on the 17th, of a man in *New-York*, who belonged to the vessel, and had driven the horses she had carried for *Riley*, together with his peculiar conduct on the 18th, at the printing-office of *Lang*, are sufficient to induce an inference that he knew of the loss of the *Eliza* before the defendant underwrote. Positive proof of knowledge is not required, where there is a general report of a fact. In such cases the rule is, that slight evidence, or, as *Roccus*, *Not.* 78, expresses himself, *semi-plenæ probationes*, shall be enough. These he defines in the same place to be *conjecturæ*, *præsumptiones*, *et indicia*. In 2 *Emer*. 124. 5. 130, 133. the principle is recognised, and many authorities cited to the

NEW-YORK, May, 1805.

H. Livingston v. J. Delafield.

NEW-YORK, same effect.  Do not then the circumstances here amount to these
May. 1805.   *semi-plenæ probationes?*  In *Stewart* v. *Dunlop, Park*, 209, there
H. Livingston was no actual evidence of the assured's having known of the loss
v.        of the vessel insured, yet it was presumed merely because a per-
Delafield.   son had arrived, who had brought the intelligence, and commu-
nicated it in the city. ' In *Da Costa* v. *Scanderet. Park*, 179. the
suppression of a doubtful account of a vessel like that of the
assured's, being taken, was ruled to be a fraud.  Upon the second
point there can be no doubt.  The time of sailing, could not have
been communicated, for it appears that though the vessel was
greatly out of time, she was, notwithstanding, underwritten at
only the ordinary premium.  This is a sure criterion to deter-
mine the nature of the representation made.  *Pawson* v. *Watson,
Cowp.* 785.

*Johnson* and *Hoffman*, contra.  The principles relied on are ap-
plicable only to those frauds which arise from presumptions *juris
et de jure*, and are the effect of positive institution, against which
no proof can be allowed, 2 *Emer.* 139.  It is for this reason, that
when the facts are ascertained, the judge, according to the code
in which those rules subsist, pronounces whether the circum-
stances amount to fraud or not.  The very origin of these regu-
lations are sufficient to induce their rejection by us.  They are
selected from the ordinances of various codes, and were founded
according to *Pothier*, No. 21, on the rareness of good faith
among men, and the difficulty which the insurer sustained in
proving a positive fraud.  *Millar*, page 75, states that they are of
no authority in the English law.  And even in the very system
where the positions laid down for the defendant are allowed, they
do not extend to any other cases than those of frauds by ordinance.
For both *Emerigon* and *Roccus* assert that the general rule is, to
deem all transactions *bonâ fide*, till the contrary be proved. 2 *Emer.*
132. *Roc. Not.* 51. 78.  But the conduct of the defendant in per-
mitting the seamen who arrived on the 17th to depart, without
examination, ought to preclude him from casting an air of sus-
picion on the transaction.  He had it in his power to have pro-
cured their testimony, and has neglected to do it.  The question
of fraud has been fairly submitted to that tribunal which by our
jurisprudence is authorized to decide on it, to the jury, and they
have pronounced in favour of the plaintiff.  The day of the sail-
ing of the *Eliza* is, by the broker's testimony, said to have been
communicated as stated in *Riley's* memorandum.  If this was

· done on the 16th, and the premium then, was only six *per cent*, the lapse of two days could not have much enhanced the amount. There is, therefore, no reason for granting a new trial, especially as from the register not being now in our power, we may be non-suited for want of proving interest.

*Harison* and *Pendleton*, in reply, enforced the original posi-tions of *Pendleton.*

*Per curiam,* delivered by Livingston, J. The motion to set aside the verdict in this case, is made on the grounds of fraud and concealment. The fraud alleged, is, that *Riley*, who caused the insurance to be effected, knew at the time that the vessel was lost.

Fraud, like other matters, may be established by circumstances. But the jury were not necessarily bound to conclude that *Riley* knew of the loss, because two of the *Eliza's* crew had arrived in this harbour, in the night preceding the day on which the insur-ance was made, especially without proof of their coming on shore; nor because intelligence of it had been received at one of the printing-offices in this city, as early as eight in the morning of that day. This might be, and yet *Riley* know nothing of it. These and other circumstances have been submitted to the jury, and we cannot say, their verdict on this point is contrary to evidence, or that we are at all dissatisfied with it.

The charge of an undue concealment appears to be better supported. The vessel sailed on the 25th of *September* 1801, and when *Riley* ordered insurance to be made, he admits that he knew of her sailing as early as the 3d of *October* in that year. This fact, which was a very material one in computing the risk, there is too much reason to believe, was not communicated to the defendant previous to his subscribing the policy on the 18th of *November*, 45 days after the ship had left *Jamaica*. The same risk was underwritten only two days before, and the same policy was used, when it was not suspected or known that the *Eliza* was out of time, at the same premium, at which *Delafield* wrote on the 18th, when it was known by the assured, or his agent *Riley*, that she was a missing vessel. It cannot be believed that any underwriter, however hardy, would not ask more than an or-dinary premium for insuring a vessel which had been out 45 days, between *Jamaica* and this port. *Seton*, the insurance bro-ker, certainly does not prove that he made this communication to the underwriters. The order which he speaks of was deliv-

NEW-YORK,
May, 1805.

H. Livingston
v.
J. Delafield.

NEW-YORK,
May, 1805.

ered to those who underwrote on the 16th, and therefore, could not have contained the information which *Riley* did not acquire until two days after. It is remarkable that in the memorandum made by *Riley*, of his transactions on the 18th, he does not say, that he informed *Seton* when the *Eliza* sailed. The contrary may fairly be inferred, from the advice *Seton* gave him, to have insurance made immediately " as the risk would increase in a " few days very considerably." This observation would hardly have escaped the broker, unless he had then expected to get insurance at the ordinary premium, which he could not have supposed, if he had been informed how long the vessel had been out. A fact of so much importance ought to have been more satisfactorily proved. There is no pretence for saying, the order for insurance is in the defendant's hands, unless, as is stated, it be the one which was given on the 16th. If that be the case, which is highly probable, it would furnish conclusive testimony against the plaintiff on this point. It would establish that *Seton*, in obtaining an insurance on the 18th, repeated, or gave the same information to the underwriter, as was given on the 16th, and was silent as to the time of sailing, which a man so intelligent and correct would not have been, if that fact had then come to his knowledge. Knowing also the importance of his employer's being able to prove so essential a communication, he would have been careful to preserve evidence of it. But if a written communication was given on the 18th different from that of the 1 th, and it is in the defendant's possession, the plaintiff should have put himself in a condition to prove the contents, by giving notice to produce it.

Upon the whole, we think this fact ought to undergo a further investigation, and therefore order, that a new trial be had, upon payment of costs by the defendant, and further that he admit on the next trial the plaintiff's interest, and preliminary proofs.