ALBANY,
August, 1086.

Livingston
v.
Delafield.

*Van Vechten* for the plaintiff in error. 1. As the statute prescribes the style of the court, this ought to be strictly followed. The place appointed for holding the court, is at the court-house in *Johnstown.* The bail-bond must be taken in the form of the writ, and if not pursuant to the form prescribed by the act, it is void. 2. The allegation of the breach does not state that the defendant was to appear before *a court*, but merely to appear before the *justices*, &c. The words " according to the exigency of the writ," will not help this defect. 3. There is not sufficient certainty as to the place ; it ought to have been averred that *Johnstown*, was in *Montgomery County*, for there are other towns, in different counties, of that name.

*Hildreth*, contra. The averment that the party was to appear before the justices, and at the place mentioned in the act where the court was to be held, was sufficient. The defendant is bound to appear according to the exigency of the writ.* The bail ought to look at the writ, to know for what he undertakes. The bail-bond need not be precisely accurate and formal ; it is sufficient if it substantially appear, in what suit, and at what place, the defendant is to appear. All the rest may be supplied by legal intendment.†

* 2 *Shower*, 51, 52.

† 2 *Levinz*, 123. 6 *Mod.* 237.

‡ 2 *Saunders*, 60. *a. b.* and the cases cited in the *notes*.

## Livingston *against* Delafield.

THIS was an action on a policy of insurance on the ship *Eliza*, at and from *Jamaica* to *New-York*, valued at 8000 rance, the broker stated to the insurers that the vessel was expected to sail the latter end of *September* or the beginning of *October*. On the morning of the day on which the policy was effected, a vessel arrived, bringing information that the vessel insured had sailed about the 3d of *October*, which news was not communicated by the insurers. The court refused to grant a new trial on the ground of its being a concealment of a material fact, after the verdict of a second jury in favour of the plaintiff. A written order for insurance was laid before the insurers by the broker, who at the same time, verbally communicated to them the facts said to be contained in the order. It was held, that the broker might give evidence of his verbal communication, without producing the order itself.

In effecting a policy of insurance, the broker

ALBANY,
Aug. 1st, 1806.

Livingston
v.
Delafield.

dollars. The cause was tried at the *New-York* sittings, the 19th *December*, 1805, before Mr. Justice *Livingston*.

The *Eliza* was a *British* vessel, and sailed from *Jamaica* the 25th *September*, 1801, on her voyage to *New-York*, and foundered at sea in a gale of wind on the 25th *October*. The policy, interest and abandonment were admitted. The policy in question, was opened on the 16th *November*, by the broker, at a premium of 6 per cent, and 2000 dollars were underwritten, being all that was then ordered. The policy was again opened on the 18th *November*, about 12 o'clock, when the defendant and two other insurers subscribed, and another was about to subscribe, when the news of the loss of the vessel was announced. The order for insurance was given to the broker, by the agent of the plaintiff, who, about 10 o'clock in the morning of the 18th *November*, was advised by the broker to have a larger sum insured, as the vessel would soon be considered as out of time ; and he then requested the broker to get 3000 dollars more insured. It appeared that a vessel had arrived on the morning of the 18th *November*, in 35 days from *Jamaica*, the captain of which informed the agent of the plaintiff, that the *Eliza* had sailed from *Jamaica* about the 3d of *October*, but could give no further information concerning her. The broker being called as a witness, swore, that he received a written order for the insurance, from the agent of the plaintiff, mentioning the time of the vessel's sailing, which was shown to the underwriters who subscribed the policy on the 16th, and also to those who subscribed on the 18th *November*. That he delivered this order, with the other preliminary proofs, to the defendant, who soon after returned them to the witness, who delivered them, a day or two after, to the agent of the plaintiff, but he did not examine the papers when they were so returned, to see if the order was among them ; though he had since examined them, but could not find it. He said that it was usual to entrust the papers with the insurers, and that they were generally returned all together. Notice had been given, on the part of the plaintiff, to the defendant to produce the order ; but on its being called for,

Livingston
v.
Delafield.

he denied that it was in his possession. The plaintiff's counsel then asked the witness to state the contents of the written order ; but this was objected to on the part of the defendant, and overruled by the judge. The witness was then asked, whether he did not communicate verbally to the underwriters, what was contained in the written order? This being objected to, the judge ruled that the witness might answer as to any verbal communications to the defendant, concerning the time of the vessel's sailing, though it had been reduced to writing and shown to them. The witness then said, that he always laid before the underwriters the order of insurance with the policy; that some looked at them, and some of them did not ; that they frequently asked him, as to the contents of the order, and he answered them according to the order ; that he had no doubt that he had done so in this case, and that he communicated to the underwriters on the 16th *November*, that the *Eliza* was expected to sail about the last of *September* or the beginning of *October ;* and that he communicated the same information to those who underwrote on the 18th *November*, because, it was his general practice to communicate to them verbally, what was contained in the written order of insurance. The premium was an ordinary premium for a vessel not out of time. The agent of the plaintiff did not mention to the broker the fact, that a vessel had arrived on the morning of the 18th *November*, bringing information that the *Eliza* sailed about the 3d *October*, nor was that fact communicated to the underwriters. It appeared, from the evidence of the broker, and several insurers, who were examined, that a vessel which has been out from *Jamaica* 45 days, would be considered as out of time, and a higher premium than ordinary, would be demanded in such case. Other witnesses testified, that, generally speaking, a vessel which has been out from *Jamaica* 45 days, would be considered out of time, but that it often depended on the course of the winds, and of voyages during the season ; that different insurers made very different calculations as to premiums, according to their different views of circumstances. It appeared that from the 1st to the 19th of *No-*

*vember*, different vessels had arrived at *New-York* from *Jamaica*, with various passages, from 29 to 45 days.

The judge charged the jury, that it was the duty of the agent of the plaintiffs, to have communicated to the underwriters, on the 18th *November*, the information brought by the vessel which had arrived that morning, as to the time when the *Eliza* sailed; but that the materiality of such communication, was a question of fact, which the jury were to determine. The jury found a verdict for the plaintiff.

A motion was now made to set aside the verdict, and for a new trial, on the following grounds. 1. That the testimony of the broker that he communicated to the defendant, which was contained in a written paper, was incompetent and inadmissible, as the paper was not produced, nor proved to be in the possession of the defendant. 2. That the material information received by the agent of the plaintiff, was concealed and not communicated to the defendant. 3. That the verdict was against evidence.

*Harison*, for the defendant. 1. The testimony permitted to be given by the broker in this case, is against the established rules of evidence. He did not pretend to recollect any thing, but what was contained in the written order for insurance. The papers had been returned by the defendant to the plaintiff, in the usual course of business, and it was, therefore, a fair presumption that the order in question had been returned and was in possession of the plaintiff's agent, or at least, that it was not in the possession of the defendant. Any parol evidence of its contents, was, therefore, inadmissible, and was properly overruled by the judge. For if the witness be allowed to state his verbal communications of that order, when his recollection is entirely founded on the perusal of the order itself, it amounts precisely to the same thing as giving parol evidence of the contents of a written paper, in the possession of the plaintiff himself, and which ought to have been produced. The witness states his recollection, too, with some doubt, as derived, rather from the course of his business, than from actual knowledge of what took place. In this way, a very salutary and well es-

* *Marshall*,
348.

† *McAndrew* v.
*Bell*, 1 *Espi-
nasse, N. P.
Cases*, 373.

tablished rule, that inferior evidence shall not be received, when higher and better proof is, in the possession of the party, will be easily evaded.

2. In contracts of insurance the utmost good faith is required. Every circumstance in the knowledge of the assured, which can in any degree influence the mind of the insurer in determining on the premium, or whether he shall underwrite, ought to be fully disclosed.* For this purpose, no circumstance can be more material than the time of the vessel's sailing. This vessel did, in fact, sail on the 25th *September*; the information given to the underwriters, was, that she was *expected* to sail about the latter end of *September*, or beginning of *October*. Now, in the morning of the 18th, before the defendant underwrote the policy, a vessel had arrived bringing intelligence of her having actually sailed.— The *expectation* of the time of a vessel's sailing, which is always uncertain, and generally later than the day mentioned, would furnish a very different ground of calculation to the insurer, than a positive knowledge that she had sailed on a particular day.† The information which has been withheld, is clearly material; and when connected with the fact of the insurance being ordered after it was received, and with the other suspicious circumstances in this case, the jury were bound to find a verdict for the defendant. The materiality of a communication ought not to be considered as a mere question of fact. The jury have exceeded the bounds of reasonable discretion in deciding that it was not material, and against all the evidence before them. It is, therefore, a case very strongly entitled to the interposition of the court, in the exercise of their powers in granting new trials, and to prevent that injustice which may be done by the erroneous or precipitate decisions of juries.

*Johnson*, contra. 1. The true object of inquiry was, what information had been given to the defendant, as to the time of the vessel's sailing, that might influence his mind in adjusting the terms of the contract. If the broker did verbally communicate the fact, such communication was altogether independent of the written order, and it was proper

ALBANY,
August, 1806.

Livingston
v.
Delafield.

for the witness to state it. If the defendant wished to show that the verbal communication varied from the written order, or if he wished to avail himself of that writing, he ought to have given notice to the plaintiff to produce it. No rule of evidence has been violated in this case. To give parol evidence of a verbal order, made at the same time with a written order, is not giving parol evidence of the contents of a written paper. They are contemporaneous, but distinct communications, though they may be of the same nature. To allow proof to be given of the one, is not giving evidence of the other.

2. There is no doubt that good faith is essential to every contract; and that it is a vital principle in the contract of insurance. Questions of actual fraud, or of the violation of good faith, are, with great propriety, left to the decision of a jury, who can judge from a full view of every circumstance, unembarrassed by technical or artificial rules. From the testimony in this case, it is evident, that the insurers must have made their calculation on the information, that the vessel was to sail about the first of *October*. The information alleged to be withheld, was, that the vessel sailed about the third of *October*. No particular day was mentioned. Both were substantially the same; the information concealed does not vary from what was before communicated; and if it could have had any effect, it would have been to diminish, rather than to increase the premium. Is it the concealment of a fact that the insurer did not know, nor had any opportunity of knowing, nor any reason to suspect? The arrival of every vessel is regularly entered at the place, where the insurers keep their office, and the fact was as likely to be known to them as to the assured. Here is neither a *suggestio falsi* nor a *suppressio veri*, unless it be deemed a suppression of truth, not to communicate information of a fact, already communicated and known to the party. Whether the information received by the agent of the plaintiff, on the morning of the 18th *November*, was material; and whether such material circumstance was fraudulently concealed from the defendant, were questions on which it was the peculiar

ALBANY,
August, 1806.

Livingston
v.
Delafield.

\* 1 *New Rep.*
*Bos. & Pull. p.*
151. *Littledale*
v. *Dixon.*
† See *S. C.*
3 *Caines,* 49.

province of the jury to decide; for they have always been considered as questions of fact, not of law.\* After two trials in this cause, and two successive verdicts in favour of the plaintiff, will the court now say, that the jury have made an erroneous conclusion from the evidence before them? †

*Per Curiam.* The evidence of the broker, of what he communicated verbally to the defendant, was admissible. It was not evidence of the written order laid before the insurers, but of a distinct verbal communication made at the same time; it does not, therefore, come within the rule that parol evidence is not to be given of the contents of a written paper. Whether the information brought by the vessel which arrived on the morning of the 18th *November*, was a material circumstance, was a question *of fact* that the jury were to decide. As they have decided upon it, we are not disposed to disturb their verdict, especially, after two juries have said that it was not material.

Judgment for the plaintiff.

# GENERAL RULE.

*Saturday, August* 16, 1806.

ORDERED that, hereafter, no person, not being a natural born, or naturalized citizen of the *United States*, shall be admitted as an attorney or counsellor of this court.

END OF AUGUST TERM.