CLINTON, Senator.
Though the letter which had been sent in the brig Friends, had passed from the hands of
*528 Finkin, in Jamaica, yet, as by the accident which happened to the schooner in which he embarked, he arrived at Norfolk, in the brig which carried his letter, and must" have known of the captain’s going ashore with the letter-bag, on the 30th day of September, when he made his protest; I consider this as precisely the same in principle as if Finkin had written the letter in Hampton Roads, after he knew of the loss; for although the regulations of the post-office might have put the letter out' of his control, yet, it was certainly in his power to have counteracted its effects by another letter. Of this there can be ho doubt; and it is in vain to pretend, that he was a Danish, burgher, ignorant of our laws and language, and disabled, by sickness, from attending to business, when it appears, that he had filled up the bill of lading, and had written two letters in the English language; that he had been at Baltimore two years before, and that he had written a letter to Boston, dated the 1st day of October, on business of much less importance than that upon which this suit is brought. Under, this view of the subject, the case of Grieve v. Young,* is applicable. It appeared, that after the insurance was ordered, the loss was known to the plaintiff, and. that he had it in his power to countermand the direction, in the ordinary course of the mail, in which his letter was conveyed. The court, upon the ground that it was his duty to do so, gave judgment for the underwriters. In like manner, in the case of Fitzherbert v. Mather, (1 Term, 12.) the agent of the plaintiff ordered insurance to be made. He acted honestly when he wrote the letter, but on the same day on which it was written he received information of the ship being on shore, and the next morning he knew that she was lost. The post did not go out till the next day; he had; therefore, a fair opportunity to send an account of the loss.. “ And if,” said Lord Mansfield, “ he was not guilty of fraud, at least he was guilty of great negligence, and his policy, being effected by mis *529 representation, is void.” In that case, it was admitted that the plaintiff was innocent, and it was contended, that-he ought not-, therefore, to suffer. But this plea was properly disregarded by the court, on the ground, that when one of two innocent persons must suffer by the fraud or negligence of a third, the person giving credit to, or employing the wrong-doer, must suffer for his misconduct. In like manner, in the present case, although Stouffer stands entirely acquitted of all blame in this transaction, yet, the fault of his partner is so far imputable to him as to shield the innocent underwriter.
The only ground which can be taken, in favour of the claim of the plaintiff, is the fact of Finkin- s having written three letters, beside the one which went by the way of Norfolk, on board of the Friends, and that, therefore, there was no probability of his being able, even if he had written from Norfolk, to prevent the insurance. This is the strong hold of the plaintiffs. But it is to be observed, that though all the letters were dated on the 16th day of August, yet' it does not appear that they were all sent at the same time, nor are the places to which they were transmitted pointed out. Finkin left Jamaica ten days afterwards. In consequence of the loss of the vessel in which he sailed, he was transferred to the vessel which had taken one of the letters, and which was originally bound to New-York• He had, therefore, reason to believe, that this letter, put into the post-office at Norfolk, might fir^t arrive at the place of its former destination. The only letter which had a legible post-mark had been sent by tbe way of Charleston. Another had no legible post-mark, and the remaining one was marked, ship. What is the most singular feature in the whole of this case is, that these four letters, travelling by different routes, should arrive at the compting-h'ouse of Stouffer on the same day. Finkin knew that one of his letters, ordering insurance, was in the post-office, and what had be *530 cóme of the others he did not know. They might have been lost; or they might have reached the place of destination. . He knew that it was in is power to prevent the insurance, which might take place in consequence of that letter. If the others, or any of them, had preceded.it, and the insurance had been effected, the underwriters would have been bound. If they had known the loss, and yet, had insured, they would have been obliged to refund the premium. In like manner ought Firikin to be treated. He well knew that the vessel had foundered, and yet he-insured. This conduct, in my opinion, was fraudulent: at least, it amounted to an undue concealment, and gross negligence. “All intentional concealment of circumstances, which vary the risk, is fraud, in insurance. If, whether from fraud or from error, the subject is considered by one of the parties as materially different from what it is in reality, the agreement is, in fact, incomplete, and the person who suffers is entitled to redress.”*
“ It is not merely on the ground of fraud,† that a concealment avoids the contract. Even a concealment, which is only the effect of accident, negligence, inadvertence, or mistake, will be equally fatal to the contract, as if it were intentional and fraudulent.” “ The learned judges of our court,” says another writer,‡ “ feeling that the very essence of insurance consists in a rigid attention to the purest good faith, and the strictest integrity, have constantly held, that it is vacated and annulled by the least shadow of fraud or undue concealment.”
Being satisfied that the whole complexion of Finkin's conduct, after he knew of the loss, partakes of design, and evinces undue concealment; being also persuaded, that he had reason to believe, that the letter from Norfolk would first reach his partner, and that he took no measures, and did not use ordinary diligence to counter *531 act its effects, I am of opinion that the judgment of the' supreme court ought to. be' affirmed;(a)
This being the unanimous opinion- of the court, it was, thereupon, ORDERED and adjudged, that the judgment of the supreme court be affirmed, and that the plaintiffs pay to the defendants their costs, to be taxed, and that the record be remitted, &c.-
Judgment of affirniáncé.-

 Miller, 65.

 Miller, 41.

 Marshal, 347.

 Park, 184.

 Vide Andrews and others v. The Marine Insurance Co. 9 John. Rep. 32.