BULKLEY v. NAUMKEAG STEAM COTTON CO. See Case No. 4,301.

---

## Case No. 2,118.

### BULKLEY v. PROTECTION INS. CO.

[2 Paine, 82.] [1]

Circuit Court, D. Connecticut. May Term, 1835.

INSURANCE — APPLICATION — CONCEALMENT—MISREPRESENTATION — DESCRIPTION OF VOYAGE IN POLICY—DEVIATION.

1. All facts material to the risk, known to the assured and not to the underwriter, and

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Reported by Elijah Paine, Jr., Esq.]

which may influence the latter as to taking the risk on the rate of premium, must be fully and in good faith disclosed when the policy is effected.

[See Hubbard v. Coolidge, Case No. 6,816; Kohne v. Insurance Co. of North America, Id. 7,920.]

2. But this rule does not apply where the concealment is as to a matter which is covered by a warranty, express or implied.

3. If, however, a misrepresentation of facts respecting such matter is made in answer to inquiries, it will avoid the policy—for the contract of insurance is one of good faith.

4. And if such misrepresentation is voluntarily made, without being drawn forth by inquiries, it will have the same effect—for the false information may have prevented the inquiry.

5. As where the insured volunteered a representation, which was untrue, as to the age of the vessel, and her standing on the books of insurance companies in a distant city, it was *held*, that although such representation related to the seaworthiness of the vessel, of which there was an implied warranty, yet, if material, that it would avoid the policy.

6. Where the policy described the voyage as from Ocrocoke to St. Bartholomew's or St. Thomas, and at and from thence to Tobasco, it was *held*, that it did not authorize the assured to go to both ports, but to either, at his election; and that, having first stopped at St. Bartholomew's, and afterwards proceeded to St. Thomas, it was a deviation.

[Cited in Hearn v. New England Mut. Mar. Ins. Co., Case No. 6,301.]

7. Such a departure from the voyage will not be a deviation, if shown to be a usage; for usages of trade are supposed to be known to underwriters, and are impliedly made part of the contract; but the usage should be so certain and uniform as to warrant the presumption that it is generally known as the law of the trade.

[Explained and distinguished in Hearn v. New England Mut. Mar. Ins. Co., Case No. 6,301. Cited in Hostetter v. Gray, 11 Fed. 181; Hostetter v. Park, 137 U. S. 40, 11 Sup. Ct. 1.]

[See note at end of case.]

[At law. Action to recover upon a policy of marine insurance. There was a verdict for plaintiff, and defendants moved for a new trial, which was granted.]

Perkins and Ellsworth, for defendants.
Dana and Staples, for plaintiff.

THOMPSON, Circuit Justice. Two grounds have been taken in support of the application for a new trial in this case: (1) That the verdict is against the evidence given at the trial; and (2) for misconduct or irregularity on the part of the jury, for disclosing the verdict before it was delivered in court. The action is upon a policy of insurance, bearing date the 11th of January, 1830, $1,500 on the schooner Director, and $1,000 on the freight, on a voyage at and from Ocrocoke in North Carolina, to Saint Bartholomew's or Saint Thomas in the West Indies, and at and from thence to Tobasco, and at and from thence to New York. The schooner arrived safe at Tobasco, and took in her return cargo, and sailed on the 13th of September, 1829, on her return voyage, and was lost on the bar at the mouth of the harbor of Tobasco. The jury at the trial in September last, found a verdict for the plaintiff for the whole amount claimed.

It is contended that the verdict is against the evidence, upon two points submitted to the jury: 1. With respect to the representation as to the age of the vessel; and 2. With respect to the deviation. The representation on procuring the policy to be underwritten was, that the vessel was six years old, and stood in New York on the books of the insurance companies A 2 good, whereas, in point of fact, it appears from the evidence that she was seven years and eight months old, and did not stand on any of the books of the insurance companies in New York as A 2 good; but in four of the companies as A 3, and in one in 1829, as A 2, but ought to have stood A 3 good, in the opinion of the inspector who kept the books. It is contended on the part of the assured, that this is matter relating to the seaworthiness of the vessel, and becomes immaterial by reason of the implied warranty of seaworthiness.

It is a general rule, that all facts material to the risk, and known to the one party and not to the other, and which may affect the mind of the underwriter, either as to the point whether he will underwrite at all, or at what rate of premium, must be fully and in good faith disclosed when the policy is effected. But as an exception to this general rule, it seems to be pretty well settled, that when the matter which it would be otherwise necessary to disclose is covered by a warranty, either express or implied, no representation need be made. But when there is a misrepresentation in answer to inquiries made by the underwriter, it will avoid the policy, although the matter misrepresented may be covered by a warranty. And this distinction grows out of the principle, that the contract of insurance is peculiarly one of good faith.[2] So that in the present case, if inquiry had been made by the underwriters

[2] On application for insurance, it is stated by the insured that no spirits would be allowed on board; in an action on the policy, it is proved that the master of the vessel had two kegs of spirits in the cabin, which would have become his as a perquisite on his arrival at the port of destination, but which were not even broached while on board; held, that the policy was valid. Such a representation would not forbid the taking on board a whole cargo of spirits, if taken for transportation in the regular course of business. Irving v. Sea Ins. Co., 22 Wend. 380. Where the policy states the insurance to be for account of A. B., it is equivalent to a representation that A. B. is owner. Kemble v. Rhinelander, 3 Johns. Cas. 130. Fraud may be established by circumstances. Livingston v. Delafield, 3 Caines, 49. A jury is not bound to conclude that the insured knew of a loss at the time of effecting the insurance, because two of the vessel's crew had arrived in the harbor the night before, and intelligence of the loss had been received in the place where he resided on the day when the policy was subscribed. Id.

as to the age of the schooner, and how she stood on the books of the insurance companies in New York, the information given might have been a misrepresentation that would avoid the policy, if the jury had found it material, and that it would have influenced the underwriters. 1 Kent, Comm. 233; 1 Phil. Ins. 89; Haywood v. Rodgers, 4 East, 590. It may be admitted that it was not necessary in the first instance for the assured to state the age of the vessel, or how she was rated by the New York insurance companies. He might have remained silent without its affecting the policy. But it is no way clear, that where such information is voluntarily given, although not drawn out by inquiries made by the underwriters, it will not equally affect the policy. The very reason for not making the inquiry might have been, that the information had already been given, and the inquiry would have been useless if not impertinent. To say that information volunteered, although false and material, shall not affect the policy where the facts misrepresented relate to matter covered by a warranty, is opening a door to fraud inconsistent with sound policy, and that good faith called for in the contract of insurance. I do not deem it necessary, however, to express any decided opinion upon that point. The materiality of the misrepresentation was matter for the jury, and if the

---

Every fact in the knowledge of the assured, which enhances the ordinary risk, and which would, if disclosed, enhance the premium, ought to be communicated to the underwriters. Seton v. Low, 1 Johns. Cas. 1. In effecting the insurance, the broker stated to the insurer that the vessel was expected to sail the latter end of September or the beginning of October. On the morning of the day on which the insurance was effected, a vessel arrived bringing information that the vessel insured had sailed about the 3d of October, which news was not communicated to the insurers. The court refused to grant a new trial, on the ground of its being a concealment of a material fact, after the verdict of a second jury in favor of the plaintiff. Livingston v. Delafield, 1 Johns. 522. If a person who is a subject of and residing in a belligerent country, be beneficially interested, a cestui que trust in property warranted neutral, his interest should be disclosed to the insurer. Murray v. United Ins. Co., 2 Johns. Cas. 168. The insured made the following representation: "I have information of her sailing, and she has been out this day, 26 days;" the information is applicable as well to the sailing as to the time she had been out; and although it appears that she had been 27 days out, the difference is immaterial. Williams v. Delafield, 2 Caines, 329. A representation that a man has been a naturalized citizen since a particular year, does not mean that he was so in that year. Coulon v. Bowne, 1 Caines, 288. A representation in time of peace, that the vessel will sail in ballast, is substantially complied with, though she sail with a trunk of merchandise and a few barrels of gunpowder laden on board. Suckley v. Delafield, 2 Caines, 222. The insured is not bound to disclose to the insurer that the goods insured are contraband of war, as such goods are lawful within the meaning of the policy. Seton v. Low, 1 Johns. Cas. 1; Skidmore v. Desdoity, 2 Johns. Cas. 77; Juhel v. Rhinelander, Id. 120; s. c. affirmed in error, Id. 487. A representation that the vessel insured is American, is equivalent to a warranty. Vandenheuvel v. Church, 2 Johns. Cas. 173, note. A representation that the vessel has a bill of sale on board is not complied with, unless it be produced, or be capable of being produced when occasion requires; and it is a material document, and necessary to be on board. Murray v. Alsop, 3 Johns. Cas. 47. A representation to the insurer that a vessel had been about nine weeks, when, in fact, she had been out ten weeks and four days, is not a material misrepresentation, provided the latter period be within the usual time of the voyage; and what is within the usual time for a vessel to perform a voyage is a question of fact for the jury. Mackay v. Rhinelander, 1 Johns. Cas. 408; Williams v. Delafield, 2 Caines, 329. The insurer is presumed to be acquainted with the situation and topography of the places to which the vessel is destined. De Longuemere v. New York Fire Ins. Co., 10 Johns. 120. So, if there be no havens or harbors on the coast to which the vessel is insured, that fact will be presumed to be within the knowledge of the insurers, and need not be disclosed. Id. The master of a vessel insured to Martinique, without specifying the port was instructed by his owner to keep well to the eastward, and to endeavor to make a particular port in M., and if he should be turned away by a cruiser, then to go to L., and take the first opportunity to get to M. These instructions were not made known to the insurer; but the court held the concealment immaterial. Talcot v. Marine Ins. Co., 2 Johns. 130. If the policy contains no warranty, concealment of the residence of the insured in a belligerent country, or of the interest of such person in the property, is immaterial. Elting v. Scott, 2 Johns. 157. It is necessary to disclose how long a vessel had been in the port from which she is insured, unless her having been there previous to the insurance had enhanced the risk. Kemble v. Bowne, 1 Caines, 75. It is not necessary to disclose that the vessel is a prize ship, except in the case of a warranty or representation, negativing her being a ship of that description. Kemble v. Bowne, 1 Caines, 75. That the insured is a subject of a belligerent state, and had emigrated to this country, flagrante bello, and become naturalized, need not be disclosed. Duguet v. Rhinelander, 2 Johns. Cas. 476, 1 Caines, Cas. 25. Where an assignment of the policy does not vary the risk, the insurer need not have notice. Earl v. Shaw, 1 Johns. Cas. 313. Where there is no warranty or representation, the sailing with a false clearance is immaterial, and need not be disclosed. Barnwell v. Church, 1 Caines, 217. A vessel, of which the master was part owner, was cast away and lost about ninety miles from the port of destination, where the other part owners resided, who, after the loss, and before notice of it, had insurance made: there being no actual fraud in the case, it depended on the question of constructive fraud, on the ground that the captain had not used due diligence in communicating intelligence of the loss; held, that the master, not having directed insurance or being apprized of any intention to insure, was bound to exercise ordinary diligence only. Andrews v. Marine Ins. Co., 9 Johns. 32. A vessel was insured from A. to B.; before effecting the insurance, another vessel had arrived at B. from A., which place she left subsequently to the sailing of the vessel insured; it is not thence to be contended that the insured knew of a storm, which the vessel that arrived had encountered, and concealed the fact: and his communicating to the insurer that he had information of her sailing, is a sufficient intimation that a vessel which sailed with or after the one insured, had arrived. Williams v. Delafield, 2 Caines, 329. If an insured send orders by several conveyances to insure, and afterward arrive in the neighborhood of the place to

motion for a new trial turned upon this point, I am not prepared to say that the verdict is so much against the weight of evidence as to justify setting it aside.

Whether or not there was a deviation which will defeat the right of recovery, depends upon the question of usage. The voyage as described in the policy is from Ocrocoke to St. Bartholomew's or St. Thomas, and at and from thence to Tobasco, and at and from thence to New York. That the policy only covers a voyage to one of the other of the West India Islands mentioned, cannot admit of a doubt unless justified by usage. It was at the election of the assured to go either to the one or the other; but the language of the policy is too plain and explicit to admit of a construction that it authorizes a voyage to both. The shortness of the time, or of the distance of a deviation, is immaterial, if voluntary and without necessity, and not justified by usage; although neither the risk nor the premium would have been increased, if the assured had wished the policy so made as to authorize going to both ports. The outward cargo was discharged at St. Thomas, and the deviation complained of is the going previously to St. Bartholomew's. Some criticism has been made at the bar upon the evidence as to the vessel's actually so touching at any port in St. Bartholomew's, as could be considered a

---

which his letters were directed, knowing that a loss had in the meantime happened, and on board a vessel in which he knew one of his letters to be, he is bound to give his agent information of the loss by the same mail which he knew would carry the letter ordering insurance; and an insurance, effected under such circumstances, will be void. Watson v. Delafield, 2 Caines, 224, 1 Johns. 150; s. c. affirmed in error, 2 Johns. 526. When the policy is effected for "whom it may concern," the insurer has no right to say that the name of insured was not disclosed; in such case, the insurer takes upon himself the risk of the property, whether belligerent or neutral. Elting v. Scott, 2 Johns. 157. A representation is defined to be a collateral statement either by parol, or in writing, of such facts or circumstances relative to the proposed adventure, and not inserted in the policy, as are necessary for the information of the assurer, to enable him to form a just estimate of the risk. If the fact or circumstance appear on the face of the policy, it becomes a warranty and not a representation: it is essential, therefore, that it be of some matter out of, and collateral to the contract, and makes no part of the policy. Vandervoort v. Smith, 2 Caines, 155. A bona fide equitable interest in property, of which the legal title is in another, may be insured under the general name of property, or by a description of the thing insured, unless there be a false affirmation or representation, or a concealment after inquiry of the true state of the property; and the applicant for insurance is not bound to state the particular interest he has in the premises to be insured, unless specially inquired of by the assurer. Tyler v. Aetna Fire Ins. Co., 12 Wend. 507. A new trial will be granted where the judge, instead of submitting the question to the jury whether the concealment of the fact of a previous insurance was or was not material to the risk of a subsequent insurance, charged them that knowledge by the assured of a previous insurance and neglect to disclose the fact, was such a concealment of a fact material to the risk as avoided the second policy. Id. The necessity of disclosing the title of the applicant would greatly embarrass the operation of insurance, without affording any essential benefit to the offices. Id. Any error in the deduction or description of title might be fatal. Id. The insurer is only responsible to the extent of the interest of the applicant, and that must be shown upon the trial. The only object, therefore, in the previous disclosure of it, is to enable the insurers to estimate the risk and premium. Id. What facts within the knowledge of the assured are material to the risk, and necessary to be communicated to the assurers at the time of the application, is matter exclusively for the jury to determine, as was decided after the fullest consideration, and by the highest tribunal in the state. New York Firemen's Ins. Co. v. Walden, 12 Johns. 516. The underwriter on a policy of insurance enters into the contract, and computes the premium, in full confidence that the insured, being fully informed of all the circumstances relating to the intended voyage, has dealt fairly with him, and has kept back nothing which it might be material for him to know. Every fact and circumstance, therefore, which can possibly influence the mind of the insurer, in determining whether he will underwrite the policy, or at what premium, is material to be disclosed, and a concealment thereof will vitiate the policy. Ely v. Hallett, 2 Caines, 57. A concealment is to be considered, not with reference to the event, but to its effect at the time of making the contract. The question, therefore, must always be, whether, under all the circumstances, there was at the time the policy was underwritten, a fair representation, or a concealment, either designed or fraudulent; or, though not designed, varying materially the object of the policy, and changing the risk understood to be run. Id. It is always a question how far the want of disclosure of a paper, admitting it to be intentionally a false one, was material to the risk. Le Roy v. United Ins. Co., 7 Johns. 343; Barnwell v. Church, 1 Caines, 217; Kemble v. Bowne, 1 Caines. 75; Talcot v. Marine Ins. Co., 2 Johns. 130; Walden v. New York Ins. Co., 12 Johns. 128. In an action on an open policy on goods laden on board the brig Minerva, at and from New York to Amsterdam; and in the memorandum at the bottom, the property insured was warranted to be American property; and also warranted that the property was not imported by the exporters. The vessel was taken by a British privateer, and the hides which were insured were condemned, as belonging to the enemies of Great Britain. The defendants objected to a recovery as for a total loss, on the ground, that the vessel had on board a certificate of origin from the French consul, and that the defendants were not informed of this document. It was said to have been a false paper, and the efficient cause of condemnation; but the court held, that the plaintiffs were entitled to recover, saying, "admitting the certificate not to be strictly true, there was no evidence of any mala fides in the plaintiffs, the jury have not found any fraud in them, in respect to the contents or concealment of the paper. On the contrary, it is found by the jury that such a certificate was a usual and customary document on board of a vessel for France or Holland; and it was held that the insured were not bound to make it known to the insurer. Le Roy v. United Ins. Co., 7 Johns. 343. If he accept the abandonment, the subsequent wages will be chargeable to him as owner and not as insurer. Id. It seems that the particular interest which the insured has in the property insured need not be described in the policy. Thus, a mortgagor or mortgagee need not disclose his qualified or partial interest. Traders' Ins. Co. v. Robert, 9 Wend. 409.

deviation. But no reasonable doubt can be entertained upon that point. The captain in his deposition describing the voyage, says: the vessel went from Elizabeth City to St. Bartholomew's, and from thence to St. Thomas, where they delivered all the cargo; and again he says: the vessel went first to St. Bartholomew's and thence to St. Thomas, and after that to Tobasco. The same language is here adopted in describing the voyage to St. Bartholomew's as to St. Thomas, and will not admit of a construction that the vessel only sailed by St. Bartholomew's, or lay off and on the harbor. But the plain and obvious construction of the deposition is, that the vessel went to St. Bartholomew's, but a market for the cargo not being found there, she proceeded to St. Thomas, and there disposed of her cargo; and this was clearly a deviation unless justified by usage. If the policy gives no liberty of touching at any specified port or ports, it is a deviation to stop unnecessarily at any port where vessels bound on the same voyage do not usually touch.

Underwriters are presumed to know the particular usages of the trade, and the local situation and circumstances of the ports comprehended within the voyage insured. And matters of general notoriety, and equally open to the knowledge of both parties, are presumed to be known to both. Where, therefore, a policy is made upon a particular voyage, the usages relating to such voyage are impliedly made a part of the contract, although the policy contains no express provision on the subject; but such usage ought to be so certain and uniform, as to warrant the presumption that it is generally known as the law of that trade. 3 Wash. C. C. 150 [Collings v. Hope, Case No. 3,003]; 1 Gall. 444 [The Francis, Id. 5,032]. Where the usage set up relates to the right of touching at any particular ports in the course of the voyage, it ought to be so uniformly pursued, that it may be presumed to be known to the parties. And two instances of touching at a particular port was held not sufficient to establish a usage in the case of Martin v. Delaware Ins. Co. [Id.], cited, 1 Phil. Ins. 184.

It is deemed unnecessary to go into a particular examination of the testimony on the subject of usage. The weight of evidence is clearly against any known and established usage, as set up on the part of the plaintiff. And indeed it may well admit of doubt, whether if the case stood alone upon the evidence of the three witnesses on the part of the plaintiff, the usage would be sufficiently established to justify going into St. Bartholomew's, and afterwards unloading at St. Thomas. These witnesses do not state any facts showing any usage or actual practice on this subject; but rather seem to express an opinion as to the law of the case

upon a policy like the present; for they say, unless there was liberty to touch at St. Bartholomew's, there would be no use in naming the two ports; and admit that on a voyage direct to St. Thomas, no other port being mentioned, it would be a deviation to stop at St. Bartholomew's. This policy must be considered in this light. It is not a policy covering a voyage to more than one port for any purpose whatever; it is to one or the other of two ports, at the election of the assured. This may be a very important advantage to the assured, and by no means implies a right of going to both ports. It would be confounding language to read the word "or" for "and." One of the plaintiff's witnesses thinks the vessel might, under a policy like the present, lay off and on the harbor of St. Bartholomew's long enough to send in her boat to make inquiry respecting the market, but that the vessel could not go into the harbor without vitiating the policy. So that according to this witness, the plaintiff cannot recover in this case; but when the testimony of fifteen witnesses on the part of the defendants is taken into consideration, the preponderance is too great to sustain the verdict; and the ends of justice require that it should be set aside and a new trial granted on payment of costs; and this view of the case renders it unnecessary to notice the other ground upon which the motion has been rested.

[NOTE. An intended deviation not actually carried into effect will not vitiate the policy. Marine Ins. Co. v. Tucker, 3 Cranch (7 U. S.) 357; Maryland Ins. Co. v. Woods, 6 Cranch (10 U. S.) 29. Unjustifiable delay constitutes a deviation. Warder v. La Belle Creole, Case No. 17,165. But a delay of a few hours to take from a foreign vessel the crew of a deserted ship will not amount to a departure. Williams v. Box of Bullion, Id. 17,717. Trading at a port, at which liberty is given to touch, may, when it involves delay, amount to a deviation. Maryland Ins. Co. v. Leroy, 7 Cranch (11 U. S.) 26; United States v. The Paul Shearman, Case No. 16,012. But a discharge of cargo which causes no delay nor increases the risk is not a deviation. Hughes v. Union Ins. Co., 3 Wheat. (16 U. S.) 159; Same v. Same, 8 Wheat. (21 U. S.) 294. It is not a deviation to take necessary measures to prevent capture. Haven v. Holland, Case No. 6,229. To go out of the course to save property, merely, is a deviation, but otherwise if the turning aside is to save human life. The Boston, Id. 1,673; The Henry Eubank, Id. 6,376; Bond v. The Cora, Id. 1,621, affirming Id. 1,620; Sturtevant v. The George Nicholaus, Id. 13,578; Crocker v. Jackson, Id. 3,398. Nor is there a deviation when the departure is authorized by the usages of the trade. Bentaloe v. Pratt, Id. 1,330; Haven v. Holland, supra. For a vessel insufficiently manned at the commencement of her voyage to go out of her course to supplement her crew constitutes a deviation. Cruder v. Pennsylvania Ins. Co., Id. 3,452. And see, generally, Glidden v. Manufacturers' Ins. Co., Id. 5,482; Martin v. Delaware Ins. Co., Id. 9,161; Winthrop v. Union Ins. Co., Id. 17,901; Govon v. Pleasants, Id. 5,647; Coles v. Marine Ins. Co., Id. 2,988; Wood v. Pleasants, Id. 17,961.]